

Michael Richardson
Reg. No. 41001-013
U.S. Penitentiary Tucson
P.O. Box 24550
Tucson, AZ 85734
<u>Pro Se</u>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MICHAEL JAMES RICHARDSON,    )    No. 1:17-cv-04472-JMS-DLP
        Petitioner,    )
                )    <u>MOTION FOR SERVICE OF</u>
      v.    )    <u>GOVERNMENT RESPONSE AND</u>
                )    <u>TO TOLL RUNNING OF REPLY</u>
UNITED STATES OF AMERICA,    )    <u>DEADLINE UNTIL ACTUAL</u>
        Respondent.    )    <u>RECEIPT OF RESPONSE</u>
                )

      COMES NOW Petitioner Michael Richardson and requests service
upon him of the Respondent's Response to his motion under 28 U.S.C.
§2255.  Petitioner further requests that the twenty-eight day
period in which to reply to Repsondent's Response, set by the
Court's Order of December 12, 2017 (Docket Entry 7) be tolled
and not begin to run until Petitioner's actual receipt of that
Response.

      In support of this request, Petioner states under penalty
of perjury the following:

1.    Petitioner has not received a copy of the Government's
Response to his §2255 motion.  Petitioner does not have access
to PACER or electronic mail.  However, he paid another inmate
to ask his family to look up his case on PACER and find out whether
the Respondent had filed its Response by the March 9, 2018, dead-
line.  On March 28, 2018, the Petitioner learned that the Response
had in fact been filed on March 2, 2018.

-1-

2.   Petitioner does not have the ability to print a copy of
the Respondent's Response from PACER (assuming the document is
publicly available) and does not have the funds to pay another
inmate to ask his family to print the document.

3.   Petitioner assumes that the Respondent's Response was accomp-
anied by a certificate of service and that Respondent made a
good faith effort to serve its Response on Petitioner.  Whether
due to administrative error at the U.S. Attorney's Office, non-
delivery by the U.S. Postal Service, or an error at U.S. Penitent-
iary Tucson, the Response was never received.

4.   Petitioner submits that it is likely that any error was
due to malfeasance at U.S. Penitentiary Tucson.  The institution's
mailroom has a reputation for nondelivery of mail and interference
with legal mail in particular.  Enclosed as **Exhibit A** is a declar-
ation from an inmate describing ongoing problems with the mailroom
and the expense and legal prejudice that it has caused inmates.

5.   The enclosed declaration establishes that even when mail
is delivered by the institution, it is often delayed for a week
or more.  Accordingly, Petitioner requests that the period in
which for him to file a Reply to the Respondent's Response not
begin to run until Petitioner actually receives the Response.
Petitioner will file with his reply a certificate stating under
penalty of perjury the date on which he received the Response
and the date on which his Reply is submitted to prison authorities
for mailing, pursuant to the "prison mailbox rule" of Houston
v. Lack, 487 U.S. 266 (1988).

WHEREFORE Petitioner respectfully requests that the Court:

(1) Order Respondent to serve upon him a copy of its March 2, 2018, Response, as filed with the Court; or direct the Clerk to mail to Petitioner a copy of the Respondent's Response and all supporting materials (D.E. 15).

(2) Stay the running of the twenty-eight day Reply deadline until Petitioner's actual receipt of the Respondent's Response.

(3) Enter a notation on the docket stating that mail delays at U.S. Penitentiary Tucson may cause Petitioner to take up to an extra fourteen days to receive documents sent to him and for documents sent by him to arrive.

I, Michael Richardson, declare under penalty of perjury that the foregoing information is true and correct.  Done this twenty-ninth day of March, 2018.

Respectfully submitted,

Michael Richardson
Pro Se

Exhibit A

## DECLARATION OF MATTHEW MULLER
### REGARDING INMATE MAIL SERVICE AT U.S. PENITENTIARY TUCSON

I, Matthew Muller, declare:

1.   I am an inmate at U.S. Penitentiary Tucson in Arizona.  I have been incarcerated here since June of 2017.

2.   Prior to my incarceration, I was a licensed attorney and practiced before several U.S. District Courts and Courts of Appeal. I now assist other inmates on a pro bono basis with their federal court litigation, comprising mostly postconviction motions under 28 U.S.C. §2255.

3.   In the course of assisting inmates here, I have encountered many stories of problems with the receipt and sending of both legal mail and general correspondence.  Many instances caused substantial prejudice to the inmates' cases and I have seen at least two examples in which inmates entitled to relief were pre-vented from obtaining it due to malfeasance by the U.S. Penitentiary Tucson mailroom.

4.   The Supreme Court recognized in Houston v. Lack, 487 U.S. 266 (1988), that prisoners face special challenges in communicating with courts and attorneys due to the vagaries of prison mail systems.  These challenges appear to be especially pronounced at USP Tucson.  Based on my direct experience with cases I have handled, staff here routinely fails to handle mail in accordance with Bureau of Prisons regulations and policy statements.  For example, it is Bureau policy that mail from a court is to be treated as legal mail ("special mail" in Bureau parlance).  None-theless, staff here more often than not treat it as general

-1-

correspondence.  This subjects it to a longer screening process
as well as delayed and less reliable delivery.  Enclosed with
this declaration as Attachment A is a copy of an envelope that
contained a dispositive order sent to an inmate here from the
United States District Court for the District of Maine.  As with
all examples I will provide, the identifying information of the
inmate has been redacted due to many instances of retaliation
by mailroom staff against inmates who have complained about mail
service.  The attached envelope copy is clearly marked as origin-
ating from a court.  It further bears the exact marking recommended
by Bureau regulations to distinguish legal mail: "Special Mail -
Open Only In The Presence Of The Inmate" (under Bureau policy, use
of any substantially similar language should result in treatment
as "special mail").  Nonetheless, the envelope was not handled
as special mail, as indicated by the diagonally oriented stamp.
It was not received by the inmate until 22 days from the date
of the court order it contained.

5.   As mailing delays go at USP Tucson, 22 days is actually
quite short.  Enclosed as Attachment B is a mailing sent to an
inmate by his father that contained property title documents
and financial records that were needed by the inmate to contest
seizure of property from him.  As indicated by the postal stamp,
the documents were mailed from El Paso, Texas, on July 27, 2015.
The documents were not delivered to the inmate until February 28,
2017— over 19 months after they were sent.  Given that delivery

-2-

was so late, the inmate asked the mailroom staff to write on
the envelope the date on which it was delivered to him. They
complied, but insisted that any delay must have been due to the
U.S. Postal Service. However, the inmate noticed that the envelope
had been marked with a cell number, B1-112L, that he had not
occupied since 2015. He believes it was likely received that
year and marked with his then-current housing assignment, and
subsequently misplaced.

6.   Due to nondelivery of the documents in this envelope, the
inmate was unable to submit sufficient evidence to prevail in
his forfeiture matter. I am currently assisting the inmate in
an effort to reopen the case, but his property has likely already
been disposed of by the Department of Justice.

7.   In another case, an inmate here did not receive a notice
that his §2255 motion had been denied until 97 days after the
relevant order had been entered and mailed. Attachment C is
a partial docket index from his case. It reflects in entry 17
that a final judgment sent to his old prison address was returned
as undeliverable and unforwardable (in this instance it was a
different Bureau facility that failed to deliver the mail).
This occurred despite a Bureau policy that mail to a transferred
prisoner should be forwarded to a new facility, and legal mail
in particular should be delivered by all means possible.

8.   After arriving at USP Tucson, this inmate was assured he
would not be transferred again anytime soon, since for reasons
known only to the Bureau of Prisons he had been transferred

-3-

seven times in the preceding four months.  The inmate updated
his address with the court and learned that his motion had been
denied and he was now outside the time in which to appeal.  After
I began helping the inmate, it took four months and eight submiss-
ions to the district and appeals courts— including a technical
12-page brief and several evidentiary submissions— before the
inmate was allowed to proceed with his meritorious appeal.  Even
this effort by an experienced former attorney was nearly derailed
when USP Tucson returned as undeliverable one of the court's
orders— the second such return of the inmate's legal mail in
a handful of months.  See Attachment C at docket entry 33.
Enclosed as Attachment D is the Court of Appeals order remanding
the matter to District Court for an exercise of discretion deeming
the notice of appeal timely.

9.   Had he not encountered an experienced federal court litigator
will to handle his matter pro bono, I have no doubt that this
inmate's meritorious appeal would never have been heard.  This
and the other examples I have described are characteristic of
the pervasive pattern of inmate mail abuse I have observed at
this facility.  I have another case pending at the Eleventh
Circuit concerning an inmate who received a U.S. Magistrate's
report and recommendation so long after it was sent that the
District Court judge had already adopted it as a final dismissal
of the inmate's civil rights action before he could even read,
much less object to, the magistrate's factually and legally
erroneous report.  USP Tucson mail personnel regularly open and

-4-

inspect inmates' privileged and confidential letters from their
attorneys outside the inmates' presence, despite the envelopes
being properly marked as "special mail." My own privileged mail
from my attorney has been opened outside my presence, and I believe
though I do not know for certain that documents were removed
from one such letter (my attorney states he enclosed items that
were missing, though he could be mistaken). My incoming and
outgoing personal mail has come up missing with no notice from
the Bureau that the mail was interdicted for some regulatory
or security reason, which notice is required by policy any time
mail is not delivered. About ten percent of the books mailed
to me by my family have never arrived, without notification to me
or to the mailer that delivery was forbidden for some policy
reason.

10. For all of above reasons, I respectfully submit that the
pro se inmate on whose behalf this declaration is submitted is
giving an accurate account of the Bureau's malfeasance and failure
to properly handle his mail. Pursuant to the Supreme Court's
findings and opinion in Houston v. Lack and to general principles
of fairness, the Court should grant the inmate appropriate latitude
in filing his documents and tolling any applicable time limits.

I, Matthew Muller, swear under penalty of perjury that the fore-
going information is true and correct. Done this twenty-second
day of March, 2018, in Tucson, Arizona.

Signed: _____
                Matthew Muller

-5-